REGAN, Judge.
This appeal to us emanates from the refusal of the Louisiana State Board of Registration for Professional Engineers and Land Surveyors (hereinafter referred to as Board) to license Edward M. Alba as an electrical engineer. He appealed the decision of the administrative tribunal to the Civil District Court for the Parish of Orleans, and after a lengthy hearing, the lower court rendered judgment reversing the action of the Board and ordered the registration of the plaintiff as an electrical engineer. From that judgment the Board has appealed suspensively.
The record reveals that plaintiff, a 1948 graduate in mechanical engineering from Texas A & M University, was licensed by the Louisiana Board as a mechanical engineer in 1950. He has practiced both electrical and mechanical engineering in this state for more than twenty years, the last thirteen of which he operated his own mechanical and electrical engineering firm.
On May 13, 1969, he applied to the Board for a license as an electrical engineer under what is generally known as the Long Established Practice provision of the law. This is one of three methods outlined in LSA-R.S. 37:692 by virtue of which an applicant may qualify for an engineering license. The statute specifies that an individual may be licensed in one or more branches of engineering and thereafter enumerates minimum qualifications for three independent categories of licenses. Under Section (a) the applicant must be a graduate of an accredited engineering school and the Board, at its discretion, may require an examination. Section (b) permits one with “A specific record of eight years or more of experience in engineering work of a character satisfactory to the board * * * ” to *369 be licensed if he passes an examination. Section (c) is the Long Established Practice rule under which plaintiff submitted his application. From its provisions it is clear a written examination is neither mandatory nor may it be required by the Board. It reads:
“Engineers of long established practice. The board shall register an applicant without written examination, who presents the written recommendations of five or more professional engineers registered under this Chapter, and, who submits proof that he has had at least twenty years of successful practice, satisfactory to the board, not less than twelve years of which shall have been in the responsible charge of important engineering work.”
Alba’s application included:
(1) A synopsis of a work record of more than twenty years as an electrical engineer;
(2) Letters of recommendation from five registered professional engineers; and
(3) Detailed information on major projects for which plaintiff designed and installed electrical systems over a period exceeding twelve years.
On September 8, 1969, Daniel H. Vliet, executive secretary of the Board, addressed the following letter to the plaintiff:
“The Board has reviewed the application and the exhibits you submitted to support your request to become registered as an Electrical Engineer on the basis of Long Established Practice.
“As you know, it has been the policy of the Board to register engineers who qualify on the basis of ‘Long Established Practice’ in the branches in which they appear to have obtained the greatest proficiency. The Board believes that your education and experience is such that Mechanical Engineering describes the branch in which you have achieved the greatest proficiency. You are already registered as a Mechanical Engineer in Louisiana.
“The Board does not believe that the evidence in your application file justifies your registration as an electrical engineer on the basis of Long Established Practice. In addition it is noted that you have failed to pass the Board’s examination on several occasions.
“It is suggested that you change the basis on which you seek registration to Experience plus Examination. On this basis you will be required to demonstrate your understanding of electrical theory by passing a one-day examination in electrical engineering subjects. The Board has given its approval for you to take this examination on Saturday, September 27, 1969, or in March 1970, the exact date still to be established.”
In response, plaintiff’s attorney requested the Board to issue a ruling either approving or rejecting the application made under Section (c). The Board directed its executive secretary to advise Alba by letter that his application had been rejected.
Plaintiff then appealed this ruling to the Civil District Court, and it was in that tribunal that Alba was afforded his first hearing. The credentials he presented are impressive and we take cognizance of the fact that the Board adduced no evidence to challenge the uncontradictea testimony of engineers and architects to the effect that plaintiff’s electrical engineering record is excellent. His career began in 1948 with Welding Manufacturing Company Steel Fabricators and Erectors. There he remained for three years. Between 1951 and 1957 he was associated with Joseph E. Leininger & Associates, Consulting Mechanical and Electrical Engineers. For five years he headed the electrical engineering department of that firm. In this capacity he was responsible for the electrical systems installed in the Louisiana State Office Building, the Louisiana Supreme Court Building, the WWL Televi *370 sion Studio in New Orleans, the Whitney Bank Building on St. Charles Avenue in New Orleans, the St. Tammany Hospital in Covington, Louisiana and the Public Welfare Building in Baton Rouge, to name a few.
In 1957 he began the private practice of engineering under the firm name of Edward M. Alba & Associates, Consulting Mechanical and Electrical Engineers and has continued development of his business to the present time. Before listing 115 major contracts undertaken by his firm, he described his individual participation in the jobs as follows:
“I personally calculated, designed, detailed, specified and inspected air conditioning, heating, ventilating, plumbing and electrical systems (100%. mechanical and 100% electrical) for following commercial buildings for which there was an Architect. I did the electrical work under the supervision of one or other of the following registered Electrical Engineers : * * * ”
The list includes churches, schools, hospitals, university buildings, a shopping center, and other large facilities. Architects and engineers who worked with Alba on many of these projects testified that his ability in the field of electrical engineering was superior.
At the district court hearing, the five licensed engineers who originally wrote letters of recommendation to the Board, reaffirmed their recommendations with convincing and impressive oral testimony.
We are convinced from the testimony of the Board members that Alba’s application was rejected without consideration as to whether, from his work record, he was proficient as an electrical engineer. It appears that the basis for Alba’s rejection are twofold: (1) He failed an examination given under Section (b) three times during the mid-1950s[1] and (2) he was never in responsible charge of important engineering work because he did not have the electrical engineering license necessary to permit his affixing his seal to electrical plans.
The initial question posed for our consideration is whether the Board’s action was within the scope of the authority conferred upon it by the legislature to regulate the practice of engineering in this state.
We shall, for the purpose of clarity in our opinion, briefly review basic principles of administrative law applicable herein. In enacting LSA-R.S. 37:681 et seq., the legislature created an administrative agency in which it vested fact-finding, not lawmaking, authority. The section of the statute concerning licensing engineers sets forth standards the Board must apply in evaluating the qualifications of each applicant. It is true that the Board must, of necessity, be given authority to use its discretion; however, the exercise thereof must be limited to its fact-finding power. Thus, when an administrative body expands the legislative requirements for licensing or refuses to license an engineer who meets the statutory requirements, it usurps the function of the legislature. It exceeds its fact-finding authority and thus abuses the only power that may constitutionally be delegated to it.[2]
If we apply these basic principles to this case, we can only conclude that the Board acted arbitrarily in processing the application of plaintiff by increasing the standards for qualification established by the legislature.
A paramount reason offered by the Board for refusing to license the plaintiff under the Long Established Practice Act is *371 Alba’s previous failures of examinations taken in conjunction with a Section (b) application. The Board demanded that plaintiff pass an examination, and yet Section (c) specifically states that the Board shall register an engineer without written examination once he meets three requirements, namely (1) proving he has practiced the branch of engineering for which he seeks a license for twenty years; (2) furnishing the written recommendation of five registered professional engineers and (3) demonstrating that for twelve years he has been in responsible charge of important engineering projects. Alba has established beyond question that he meets these requisites.
It is the Board’s contention that plaintiff cannot possibly qualify as having been in responsible charge of important electrical engineering projects for at least twelve years. The members concede that he did in fact design, install and/or supervise electrical systems on many major engineering projects, however, they insist that he was not in responsible charge since he could not affix the seal of an electrical engineer on the plans. The record discloses that under state law any registered engineer may stamp plans involving electrical and mechanical engineering features, even if he is registered only in one branch of engineering. However, in certain cities and parishes, ordinances require plans involving electrical engineering to be stamped by a registered electrical engineer. When projects headed by Alba were located in a city or parish where this regulation was in effect, Alba submitted his designs to a registered electrical engineer with whom he was associated and that consultant furnished the stamp. It is the Board’s position that the engineer stamping the plans is the one in responsible charge.
We cannot accept the Board’s interpretation of this section of the law. The statute contemplates an applicant may have been in responsible charge of important engineering projects before being licensed in a particular branch of engineering. Because an electrical engineer cannot use a seal until he obtains his license, the Board’s interpretation of “responsible charge” would make it virtually impossible for engineers engaged in private practice to acquire the twelve years experience outlined in thé statute.
Counsel for the Board concedes that this is true, however, he urges us to limit qualification under this section to engineers who have acquired their experience in another state or who have practiced within a corporate or governmental framework wherein engineers are not required to be licensed.[3]
We find no basis in the Chapter regulating the engineering profession indicating an engineer in responsible charge is one affixing his stamp to plans. However, in LSA-R.S. 37:682(4) the statute includes this definition:
“(4) ‘Responsible professional service’ shall mean the technical control and direction of the investigation, design, or construction of engineering works requiring initiative, engineering ability, and the use of independent judgment.”
In interpreting the meaning of “responsible charge” in LSA-R.S. 37:692, subd. A(l) (c) we conclude the above quoted definition is the standard to be applied in gauging whether Alba was in responsible charge of important engineering projects.
A third reason the Board offered for refusing to license Alba (this appears in the letter of rejection but was not emphasized at his hearing) was that the Board only registers engineers in the branch in which they are most proficient when they apply under the Long Established Practice rule. The statute provides for registration in one or more branches. It does not limit Section (c) applicants to licensing in one branch only.
*372 We are compelled to reach the inevitable conclusion that the Board exceeded its authority in rejecting the plaintiff’s application. Rather than ascertaining whether plaintiff met the requisites of the statute, it, in effect, expanded the standards set forth in the act. When an administrative agency enacts a rule enlarging requirements for licensing, its rule cannot be enforced.[4]
The only other issue we must review is whether the lower court has authority to factually determine whether plaintiff is qualified under the Long Established Practice Act. It will be recalled no hearing was held at the administrative level. Plaintiff’s appeal to the civil district court was brought under LSA-R.S. 37:702, which states:
“Any person who shall feel aggrieved by any action of the board in denying, suspending or revoking his certificate of registration may appeal therefrom to the district court of the parish of Orleans, within sixty days following the action of the board. The aggrieved party in his petition to the district court shall set out in what respect the adverse action of the board was erroneous. After citation of the board as provided by law, and full hearing, said court shall make such decree sustaining or reversing the action of the board as may seem just and proper. * * * ” (Emphasis supplied)
This Chapter does not specifically require the Board to hold a hearing before rejecting an application for licensing. In the quoted provision regulating appeal, however, it is indicated that proceedings at the district court level should be conducted as a trial de novo. In addition, the district judge is authorized to “ * * * make such decree sustaining or reversing the action of the board as may seem just and proper.”
Accordingly, we conclude it was within the province of the lower court to consider the credentials presented by plaintiff and to determine whether they sufficed to warrant licensing under the Long Established' Practice Act. The Board made no factual determination in this case, thus, when the matter was appealed, the lower court was bound by no presumptions of the correctness of the administrative fact finding board because none was made.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Plaintiff’s counsel attempted to adduce evidence showing of 10 applicants taking the same examination, no one passed. The trial judge ruled it .inadmissible, thus, it was placed in the record by proffer.

. Hunter v. Hussey, 90 So.2d 429 (La.App. 1956).

. See LSA-R.S. 37:698.

. See Kramer v. State Board of Veterinary Medical Exam., 55 So.2d 93 (La.App.1951).